**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SUZANNA AND ROGER MATTOX, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. CIV-24-235-JAR |
| | ) |
| SUNEVOLUTIONS, PRODUCT | ) |
| INNOVATIONS RESEARCH, LLC, | ) |
| COSWAY COMPANY, INC., and JOHN | ) |
| DOES 1-3, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) **ATTORNEY'S LIEN CLAIMED** |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

THERESA N. HILL, OBA #19119
thill@rhodesokla.com
RANDALL E. LONG, OBA #22216
rlong@rhodesokla.com
Rhodes, Hieronymus, Jones, Tucker
  & Gable, P.L.L.C.
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Tel: 918/582-1173
Fax: 918/592-3390

*Attorneys for Defendants, Product Innovations Research, LLC, d/b/a Sunevolutions, and Cosway Company, Inc.*

Defendants Product Innovations Research, LLC d/b/a Sunevolutions, ("PIR"), and Cosway Company, Inc. ("Cosway") (collectively "Defendants") respectfully move this Court to grant summary adjudication in their favor and against Plaintiffs on all claims. Defendants provide this Reply to address new allegations raised in Plaintiffs' Response.

## I.     INTRODUCTION

Plaintiffs falsely state that Cosway's Love Bronze contained ingredients derived from common allergens, including nuts and beans. There is no evidence to support this claim. Plaintiffs do not have the product allegedly used, cannot identify a defect and cannot establish any duties owed by Defendants. Plaintiffs' Response makes broad overreaching and unsupported allegations, misrepresents the testimony of witnesses, miscites case law and simply waves to thousands of pages of expert disclosures. Defendants carried their burden under Rule 56(c) in their opening brief. Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (citations omitted). "Taking the record as a whole, there is no genuine issue for trial." *Id.* 475 U.S. at 587. Summary judgment should be entered in favor of Defendants on all claims.

## II.    PLAINTIFFS' RESPONSES FAIL TO CONTROVERT DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS ("SOF")

4.      Plaintiffs do not dispute SOF #4, but they insert the unsupported allegation that "the warning does not meet applicable federal labeling standards, as discussed in the expert report of John Misock, former FDA labeling specialist, and expert Courtland Imel" citing Mr. Imel's 1128-page disclosure. Plaintiffs fail to controvert the undisputed facts here. Further, Mr. Misock's opinions are not admissible as he was not properly disclosed as an expert witness. *See* Dkt. 46, Plaintiffs' Expert Witness Disclosures.

1

8. Plaintiffs admit that they do not have the batch code for the product Mrs. Mattox allegedly used. They do not dispute Ms. Lai's testimony that without a batch code, it cannot be determined whether Cosway manufactured the product. The picture of the label standing alone does not establish what was in the bottle that Mrs. Mattox used and failed to retain.

9. Defendants' SOF #9 establishes that Mrs. Mattox knew that Ms. Tustin intended to throw away the bottle of bronzing lotion that she used. Plaintiffs' extraneous statements regarding when they contacted counsel are immaterial, but also unsupported.

13. Defendants SOF #13 establishes that after taking pictures of the label, Ms. Tustin made no attempt to retain the bottle of the bronzing lotion Mrs. Mattox allegedly used. Whether Ms. Tustin is a lawyer, party or anticipated litigation is simply immaterial. The undisputed SOF demonstrates that Plaintiffs knew that Ms. Tustin planned on throwing the bottle away and made no attempt to secure it.

14. Plaintiffs fail to dispute the SOF that "Ms. Tustin was never asked or informed to retain the bottle of Love Bronze." Plaintiffs' additional statements regarding the timing of consultation with legal counsel are immaterial. Further, Plaintiffs' citation from Ms. Tustin's deposition does not support Plaintiffs' allegations.

16. Plaintiffs admit SOF #16. The extraneous claims regarding Ms. Tustin's qualifications to preserve potential evidence are immaterial and of no consequence.

23. Plaintiffs do not dispute that "[a]side from the claims in this Lawsuit, Cosway has not received an adverse event report or complaint for the Love Bronze product manufactured by Cosway." Plaintiffs baldly refer to a report they allegedly made to the FDA. While this statement is unsupported in the record and discovery in this matter, Plaintiffs do not dispute that there are no

complaints aside from the claims in this Lawsuit. Further, Defendants file their Motion in Limine to Exclude the 2017 FDA inspection report simultaneously with this Reply.

The Court may grant summary judgment in Defendants' favor because Plaintiffs fail to controvert any material fact presented in Defendants' opening motion. Plaintiffs' clarifications, extraneous statements and supported allegations do not even create a question of "metaphysical doubt."

### III.     RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN DISPUTE.

1.     Plaintiffs provide absolutely no support for the allegation that some of the ingredients in the Love Bronze that Cosway manufactured in 2016 and 2017 "are derived from common allergens, including nuts and legumes." This is false, and the citations do not support Plaintiffs' allegation. Ms. Lai's testimony establishes that there are 60 ingredients in the ingredient deck for Cosway's Love Bronze. The ingredient list itself does not contain the word "nut" or "legume." *See* Ex. 2 to Defendants' Motion for Summary Judgment, Dkt. 53-2. Plaintiffs' mere speculation should be rejected.

2.     The deposition testimony does not support Plaintiffs' allegation. At most, the deposition citation shows that Cosway's Quality Control lab only did not test raw materials for allergens. There is no support for the allegation that Cosway did no testing or evaluation of raw materials or that Cosway sold the product to the public. Cosway's Research & Development department ensures formulas use raw materials that are known to be safe for consumers. The raw materials are inventoried and tested at Cosway before use. [*See* **Ex. 1**, Excerpt of Deposition of Deanna Simon, P. 12, ll. 4-10; P. 24, ll. 3-9, P. 25, ll. 18-25, P. 28, ll. 12 - 19]. Cosway's Quality Control Lab tests to ensure the raw materials received match the Certificate of Analysis provided

3

by the manufacturer. [*See* **Ex. 2**, Excerpt of Deposition of Amanda Lai, P. 57, l. 13 – P. 58, l. 4]. Cosway's ingredient list for its Love Bronze does not contain nuts or beans. *See* Dkt. 53-2.

3.    Whether Cosway employed retained a toxicologist, allergist, physician or other medical professional to assess the safety of Love Bronze is immaterial as there is simply no requirement, statutory, regulatory or otherwise, to do so.

4.    The deposition testimony cited does not support the allegation. The formulating chemists in Cosway's Research & Development department determined the formulation using qualified raw ingredients using their expertise, experience and history. [*See* **Ex. 1**]. Cosway's Quality Control Lab tests to ensure the raw materials received match the Certificate of Analysis provided by the manufacturer. [*See* **Ex. 2**].

5.    The deposition testimony cited provides no support for the allegation. Ms. Lai testified only that her QC lab would not send a finished product out for testing. Plaintiffs fundamentally misunderstand or intentionally misrepresent the role of the QC lab and Ms. Lai's testimony. The brand determines any outside testing they may desire. [*See* **Ex. 3**, Excerpt of Greg Chambers Deposition, P. 80, ll. 19 – 25].

6.    The deposition testimony cited provides no support for the allegation.

7.    The deposition testimony cited provides no support for the allegation. Ms. Simon merely testified that she did not know whether RIPT testing was completed before Love Bronze went to market. Plaintiffs attempt to confuse the roles of the R&D lab, the Quality Control lab and PIR, the brand. Finally, Plaintiffs' allegations regarding industry regulations are unsupported, uncited and immaterial.

8.    *See* Defendants SOF #4 above.

9.     Plaintiffs' allegations are immaterial absent a product Mrs. Mattox allegedly used and identification of an alleged defect in that product. Further, a mere reference to 1128 pages of an expert's disclosure does not controvert Defendants' SOFs.

10. & 11.     *See* SOF #23 above.

12.     There is no support in the record that Mrs. Mattox had a known almond allergy, that she read the label on the bottle and that she used the bronzing lotion as directed.

13.     The deposition testimony cited does not support the allegations. Defendants do not dispute that Plaintiffs allege that Mrs. Mattox developed respiratory distress after tanning at a tanning salon. Plaintiffs' additional allegations are not material to the present motion.

14.     Plaintiffs' mere reference to a more than 90-page expert disclosure does nothing to controvert Defendants' SOFs. This paragraph references an "almond-derived ingredient," but Plaintiffs continue to fail or refuse to tell Defendants and the Court what ingredient they allege is almond-derived. Plaintiffs cannot clearly articulate a defect much less prove one.

15. & 16.     Plaintiffs fundamentally misunderstand or misrepresent Defendants' position. Defendants do not dispute that Ms. Tustin's picture of a label resembles PIR's label that was affixed to a product manufactured by Cosway in 2016 and 2017. Absent the batch code on the bottom of the bottle, it cannot be determined whether the bottle in the photograph ever passed through Cosway's facility. Further, Plaintiffs have no evidence pertaining to the contents of that bottle.

17.     Plaintiffs' allegation that "[n]o other potential allergens were identified during the relevant time frame prior to Suzanna's reaction" is unsupported and immaterial.

18.     Plaintiffs' alleged injuries arising from her cardiac arrest are immaterial to this Defendants' Motion.

5

19. & 20.    Plaintiffs' alleged future medical care due to Mrs. Mattox's cardiac arrest and the costs associated therewith are immaterial to this motion.

21.    The deposition testimony cited provides no support for the allegation. At best, the testimony suggests that Cosway does not maintain training records from the relevant time frame, 2016 and 2017, when it manufactured a product named Love Bronze. The bald allegation is immaterial and fails to controvert any of Defendants' SOF's.

22.    The deposition testimony cited provides no support for the allegations. This paragraph begs the question, what are the ingredients that Plaintiffs allege "were known to be derived from nuts, seeds, or legumes."

23. – 29.    *See* Defendants SOF #4 above. Plaintiffs suggest that the label should have contained a new and additional warning different from the requirements of the FDA.

30.    *See* Response to Plaintiffs' allegations of Fact #7 above. Further, the deposition testimony cited provides no support for the allegations. Plaintiffs fail to cite the responses following wherein Ms. Simon testifies that the R&D department reviewed the safety data sheets for raw ingredients and use their expertise [**Ex. 1,** P. 25, ll. 18-25, P. 28, ll. 12 – 19].

Plaintiffs' misstatements, unsupported allegations and immaterial claims fail to controvert any of Defendants' material SOFs. Rather, Plaintiffs' allegations demonstrate that they do not have the bottle that Mrs. Mattox used and they do not know what was in the bottle. Plaintiffs seek to impose labeling and testing requirements not mandated by the FDA. Finally, Plaintiffs fail to disclose the nature of the alleged defect or the breach of duty, in other words, what is the offending ingredient that Plaintiffs believe caused Mrs. Mattox's alleged reaction.

## IV.    ARGUMENT AND AUTHORITIES.

### A. Plaintiffs fail to Properly Plead and Support Any Claim Under Oklahoma Law.

Plaintiffs broadly allege claims sounding in negligence and products liability. With respect to their products liability claims, the Response fails to demonstrate: 1) the alleged product was manufactured or distributed by Defendants; 2) a defect in the product that existed when it left Defendants' control; 3) any connection between the alleged defect and the alleged injury; and 4) why or how the product was unreasonably dangerous. Plaintiffs restate case law cited by Defendants in their opening Motion but fail to demonstrate any facts to support their legal claims. With respect to their negligence claims, Plaintiffs broadly allege "[m]anufacturers and distributors owe a duty of reasonable care to product users, including the duty to avoid foreseeable harm by mislabeling, failure to warn, failure to test, and negligence formulation" citing "*Williams v. Borden, Inc.* 637 P.2d 731, 733 (Okla. 1981)." (*sic.*) While Plaintiffs' mis-citation is likely a scriveners' error, the case does not support the proposition cited. The *Williams* Court reviewed the statute of limitations as applicable to claims of alleged occupational injuries from the cumulative effect of an allegedly harmful product. *Williams v. Borden, Inc.*, 637 F.2d 731, 733 – 735 (10th Cir. 1980). Plaintiffs further miscite *Case v. Fibreboard Corp.* in support of their broad allegations. There is an Oklahoma Supreme Court case with the same name rejecting market share in the context of a products liability action against asbestos manufacturers. *See Case v. Fibreboard Corporation*, 1987 OK 79, 743 P.2d 1062. Plaintiffs' Response on page 9 states the following: "*See also Case v. Fiberboard (sic.) Corp.*, 1996 OK 86 ¶ 12, 943 P.2d 955, 961." 943 P.2d 955 is the citation for a criminal case from Montana. *See State of Montana v. Adams*, 943 P.2d 955, 961 (Mont. 1997). 1996 OK 86 is the citation for *Brashier v. Farmers Insur. Co., Inc.*, 1996 OK 86, 925 P.2d 20 (Okla. 1996). The *Brashier* Court reviewed the recoverability of attorneys' fees in an action against an uninsured motorist carrier for bad faith. The case law and unsupported allegations contained in Plaintiffs' Response provide no clarity to their amorphous claims.

7

### B. Plaintiffs Seek to Impose New Labeling Requirements.

Defendants demonstrate in their opening brief compliance with the applicable cosmetic labeling requirements promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 379s. In Response, Plaintiffs allege new or different requirements. *See* Plaintiffs' Response, p. 10 ("...Defendants violated these very requirements by failing to disclose allergens, omitting legally and scientifically recommended warnings for known photosensitizers like DHA and glycolic acid, and misleading consumers about the product's risks"). Plaintiffs state their claims are "based on state-law duties that parallel federal obligations and fall squarely within the express exceptions provided in §379(d)." *See* Response, p. 10. This is an admission that the regulations for cosmetic labeling do not expressly require a warning for glycolic acid, allergens or some other undefined risk. Further, Plaintiffs' attempt to read a state-law duty into the exemptions contained in 21 U.S.C. § 379s(b) should be rejected. Plaintiffs cite the language of the exemptions contained in 21 U.S.C. § 379s(b)[1], but fail to include the following language:

> Upon application of a State or political subdivision thereof, the Secretary may by regulation, after notice and opportunity for written and oral presentation of views, exempt from subsection (a), under such conditions as may be prescribed in such regulation, a State or political subdivision requirement for labeling or packaging that—

Plaintiffs do not allege any violation of a State-imposed labeling requirements pursuant to 21 U.S.C. § 379s(b).

Plaintiffs' case law citations also provide no support for their arguments that some ill-defined state-law duty to warn claim allows them to proceed with a claim to impose cosmetic

---

[1] Plaintiffs cite the language from 21 U.S.C. § 379s(b) but cite 21 U.S.C. § 379s(d). 21 U.S.C. § 379(d) does not allow a state law claim seeking new or different labeling requirements.

8

labeling requirements in addition to those contained in the regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act.

- *Bates v. Dow Agrisciences, LLC*, 544 U.S. 431 (2005) involved labeling requirements under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136, *et seq. See* Plaintiffs' Response, p. 10.

- *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) involved labeling requirements under the Federal Cigarette Labeling and Advertising Act., 15 U.S.C. § 1334. *See* Plaintiffs' Response, p. 10.

- *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170 (10th Cir. 2000) involved a plaintiff that was knocked to the floor by a Wal-Mart employee pushing a cart. The *Garcia* Court did not review "state tort claims alongside federally regulated OTC labeling." *See* Plaintiffs' Response, p. 11.

- *Tansy v. Dacomed Corp.*, 1994 OK 146, 890 P.2d 881 did not address the issues of federal preemption. Rather, the *Tansy* Court initially analyzed the applicability of Restatement (2nd) 402A, comment k to medical devices. *Tansy*, 820 P.2d at 884 – 886. With respect to warning requirements, the Oklahoma Supreme Court reviewed Oklahoma's adoption of the learned intermediary doctrine permitting certain manufacturers to warn physicians rather than the ultimate consumer. *Tansy*, 820 P.2d at 886 – 887. *See* Plaintiffs' Response, p. 11.

Plaintiffs attempt to distinguish Defendants' case law specifically addressing labeling of cosmetic products by arguing that the cases cited by Defendants involved alleged contaminants. Here, Plaintiffs fail to allege the source of the alleged allergens whether through contamination or

a specific ingredient. Plaintiffs again falsely claim that "the product's actual listed ingredients include known or suspected allergens" without support. *See* Plaintiffs' Response, p. 11.

### C. Plaintiffs' Fail to Demonstrate a Defect in a Product Manufactured or Sold by Defendants.

Plaintiffs confuse their burden of proof to demonstrate a defect existing in a product at the time it left Defendants' control with their burden of proof to identify a product. Again, Plaintiffs' blanket allegations and mis-citations fail to raise even a metaphysical doubt.

- In *Kirkland v. General Motors Corp.*, 1074 OK 52, 521 P.2d 1353, there was no dispute that the 1969 Buick Opel was manufactured by GM. Here, there is no proof that the product Mrs. Mattox allegedly used was manufactured or sold by Defendants. *See* Plaintiffs' Response, p. 11.

- In *AlNahhas v. Robert Bosch Tool Corp.*, 706 F. App'x 920 (10th Cir. 2017), there was no dispute that Defendant Robert Bosch Tool Corporation designed and manufactured the subject product, a Skil Orbit Sander, Model 7490. This case discusses proof of a defect, not proof that the subject product was manufactured and distributed by defendants. *See* Plaintiffs' Response, p. 11.

- In *Dutsch v. Sea Boats, Inc.*, 1992 OK 155, 845 P.2d 187, there was no dispute that the twin-engine 340 Express Cruiser was manufactured by Sea Ray Boats, Inc. and that it was purchased from Bay West, a retail seller of Sea Ray Boats. Here, there is no proof that the product Mrs. Mattox allegedly used was manufactured or sold by Defendants. *See* Plaintiffs' Response, p. 11.

- In *Northip v. Montgomery Ward & Co.*, 1974 OK 142, 529 P.2d 489, Plaintiffs alleged defective or negligent construction of a wet cell storage battery suing the seller and the manufacturer. There was no dispute that the subject battery was purchased at defendant

seller's store. Defendants argued that Plaintiffs could not prove their claim of defect because the battery was destroyed in the explosion causing the injury. This case is distinguishable in multiple respects. Initially, the seller was a defendant and did not dispute the purchase of the product. Here, the alleged seller of the Love Bronze is no longer in business. Further, Plaintiffs cannot show that Defendants' Love Bronze manufactured in 2016 and 2017 was ever sold in Poteau, Oklahoma. The *Northip* Plaintiff specifically alleged a manufacturing defect or negligent construction. Here, Plaintiffs' theories remain unclear and any attempt to proceed on a manufacturing defect theory must fail as Plaintiffs cannot demonstrate how the subject product deviated from its design or specifications. [*See* **Ex. 4**, Judge White's Order granting Defendant's Motion for Summary Judgment, *Ralph Brown, II v. Michelin North America, Inc., et al.*, CIV-14-109-RAW, Dkt. 101, p. 2, August 11, 2015]. Finally, the destruction of a product in the event allegedly causing the injury is not spoliation and is distinguishable from disposal of the product at will. *See Patel v. OMH Medical Center, Inc.*, 1999 OK 33 ¶ 46, 987 P.2d 1185, 1202 (spoliation occurs when evidence relevant to prospective civil litigation is destroyed, adversely affecting the ability of a litigant to prove his or her claim).*See* Plaintiffs' Response, p. 12.

- Plaintiffs cite: *Brown v. Crown Equip. Corp.*, 181 F. App'x 760, 763 (10th Cir. 2006).[2] *See* Response, pp. 12 and 15. Defendants were unable to locate this case and request the Court require Plaintiffs to make a disclosure and certification regarding the use of Generative Artificial Intelligence. *See* DISCLOSURE AND CERTIFICATION REQUIREMENTS

---

[2] *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268 (Tenn. 2005) is a products liability case but does not support the proposition that testimony and photographic evidence can establish a product in dispute.

FOR GENERATIVE ARTIFICIAL INTELLIGENCE, Chambers of United States Magistrate Judge Jason A. Robertson.

- In *Woods v. Fruehauf Trailer Corp.*, 1988 OK 105, 765 P.2d 770, 774, there was no dispute that the Defendant manufactured the subject tractor-trailer. Further, the Woods Court found plaintiffs failed to come forward with evidence to establish a duty on the manufacturer to equip its tankers with nozzles and warn potential consumers of the dangers of failure to use such nozzles as alleged. *Woods*, 765 P.2d at 775. Here, there is no evidence that Plaintiffs used a product manufactured or sold by Defendants. Further, if Plaintiffs were able to produce a product or a theory of defect, the *Woods* Court teaches that a mere allegation that a specific warning or modification should be made is insufficient to establish a products liability claim. *Id. See* Plaintiffs' Response, p. 12.

- Plaintiffs cite: *St. Louis-San Francisco RY Co. v. Duke*, 1959 OK 250 ¶ 9, 363 P.2d 764. *See* Response, p. 12. Both citations are in error. The only case found with a similar name is a 1911 case from the 8th Circuit involving the death of a railroad brakeman. *See St. Louis & S.F.R. Co. v. Duke*, 192 F. 306 (8th Cir. 1911). Defendants request Plaintiffs make a disclosure and certification regarding the use of Generative Artificial Intelligence.

- *Akins v. Ben Milam Heat, Air & Electric, Inc.* 2019 OK CIV APP 52, 451 P.3d 166 is distinguishable from this case. In *Akins*, plaintiffs had a reasonable explanation for removing the furnace and stored it in a shed, making it available for defendants' expert for inspection and testing. Further, it was defendant's expert who lost the furnace. Here, plaintiffs have no reasonable explanation for securing pictures of the label but disposing of the product in its entirety. *See* Plaintiffs' Response, p. 12.

12

- *Harrill v. Penn*, 1927 OK 492, 273 P. 235 does not prescribe exactly how a Court must address spoliated or destroyed evidence. An adverse inference is one option.

Plaintiffs argue that there can be no finding of spoliation because Plaintiffs were not contemplating litigation when Ms. Tustin photographed the bottle and told Plaintiffs that she was not going to retain it. Plaintiffs set up a strawman that the only tool available to this Court as a sanction for failing to retain the evidence is an adverse inference, and that an adverse inference cannot be applied here because Plaintiffs did not intentionally destroy the product. *See* Motion, pp. 12 – 13. Plaintiffs baldly claim that after they secured pictures of the label believing that the product contained nuts or beans, they were not contemplating litigation. Plaintiffs' unsupported claims regarding when they retained legal counsel or when they believed litigation was imminent have no bearing here. In fact, Plaintiffs' counsel initially advised that the bottle was retained in his evidence locker. [**Ex. 5**, Email from R. Scott]. Defendants move for summary judgment that absent the bottle, the batch code and the contents of the bottle, Plaintiffs cannot prove the elements of their claims. Plaintiffs do nothing to controvert the undisputed facts that they do not have the bottle, the batch code or the contents.

### D. Plaintiffs Unsupported Arguments Should Not Be Considered.

Plaintiffs fail to properly cite and support their allegations and arguments. At times, it seems that Plaintiffs' primary complaint is that the product Mrs. Mattox used contains almonds, but at other times Plaintiffs broadly complain about "allergenic compounds" generally. Plaintiffs do not and cannot dispute that Cosway's ingredient list does not contain any nut or bean products. *See* Dkt. 53-2. Plaintiffs further suggest that uncited industry guidance required certain labeling and/or testing. Plaintiffs fail to demonstrate any violations of applicable regulations when Cosway manufactured its product in 2016 and 2017.

Plaintiffs' pattern of misrepresentation continues throughout the remainder of the Response. In addition to the misstatements of case law cited above, the remainder of Plaintiffs' Response is replete with additional ghost citations or misstatements of law:

- Plaintiffs cite *Austin v. Ohio Cas. Ins. Co.*, 1984 OK 41 ¶ 8, 678 P.2d 721, 723. *See* Response Brief, p. 15. There is no Oklahoma case by that name and the two citations are not associated with any case that supports the proposition.

- Plaintiffs cite "*Thompson v. Presbyterian Hosp.*, 1982 OK 87 ¶ 17, 652 P.2d 260, 264" for two separate propositions: "Oklahoma courts have affirmed punitive damage awards where health care providers or manufacturers ignored patient safety protocols;" and "Oklahoma's law permits the jury to consider a defendant's regulatory non-compliance in assessing both negligence and punitive damages." *See* Response, pp. 17 and 18. This opinion does not address manufacturers ignoring "patient safety protocols" or "regulatory non-compliance."

- Plaintiffs cite *Howard v. Zimmer, Inc.*, 2013 OK 17, 299 P.3d 463, 470 (Okla. 2013), but the quoted language that "[a] manufacturer cannot hide behind self-imposed ignorance" cannot be found in the opinion. *See* Plaintiffs' Response, p. 19.

- Plaintiffs cite *Lash v. Hollis*, 1978 OK 117, ¶ 7, 571 P.2d 917, 920. There is no Oklahoma case by this name. In *Lash v. Hollis*, 556 U.S. 1134 (2009) the United States Supreme Court denied a writ of certiorari made by an arrestee in a civil rights action. *See* Plaintiffs' Response, p. 19.

14

- Plaintiffs cite *Wagoner v. Bennett*, 1991 OK 70, 814 P.2d 476, 478[3] for the proposition that *"res ipsa loqiutor* permits the jury to infer negligence." *See* Plaintiffs' Response, p. 20. This wrongful eviction case reviewed whether punitive damages were available but does not contain the words *"res ipsa loqiutor"* nor any discussion of the legal doctrine.

### III. CONCLUSION.

Plaintiffs failed to preserve the product that is the subject of this lawsuit, have presented no evidence that it contained nuts or legumes, and have failed to identify a defect or a duty. Moreover, Plaintiffs have failed to respond to Defendants' Motion for Summary Judgment with reliable direct or circumstantial evidence that Mrs. Mattox actually used a product manufactured or sold by Defendants; that the product contained a defect when it left Defendants' control; and that any alleged defects have any connection with the alleged injuries whatsoever. Plaintiffs' brief is replete with misrepresentations of deposition testimony, reference to thousands of pages of filings, overreaching statements without support, and misstatements of mis-citations of law.

WHEREFORE, premises considered, Defendants Cosway, Inc. and Product Innovations Research, LLC respectively requests this Court enter summary judgment in their favor on all counts and claims. Defendants further request the Court demand a prompt disclosure and certification by Plaintiffs' counsel regarding the use of Generative Artificial Intelligence and any other relief the Court deems appropriate arising from Plaintiffs' misrepresentations.

---

[3] Plaintiffs improperly refer to the public domain citation as "1993 OK 100." *See* Response, p. 14. This citation to *Phillips v. Wiseman*, 1993 OK, 857 P.2d 50 is also inapplicable.

Respectfully submitted,

By: /s/ *Theresa N. Hill*
THERESA N. HILL, OBA #19119
thill@rhodesokla.com
RANDALL E. LONG, OBA #22216
rlong@rhodesokla.com
Rhodes, Hieronymus, Jones, Tucker
  & Gable, P.L.L.C.
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Tel: 918/582-1173
Fax: 918/592-3390
*Attorneys for Defendants, Product Innovations Research, LLC, d/b/a Sunevolutions, and Cosway Company, Inc.*

## CERTIFICATE OF SERVICE

    I, hereby certify that on this 29th day of July 2025, a copy of the foregoing was electronically filed with the Clerk of the Court, United States District Court for the Eastern District of Oklahoma, and submitted electronically to the following ECF registrant(s):

T. Ryan Scott, OBA # 34484
OLIVER LAW FIRM
3606 West Southern Hills Blvd., Ste. 200
Rogers, AR 72758
Tel: (479) 202-5200  Fax: (479) 202-5605
rscott@oliverlawfirm.com

and

Robert Lambert, OBA #21981
P. O. Box 9
Poteau, OK 74953
Tel: (918) 413-5201
attorneyroblambert@gmail.com

and

Harrison A. Howle
THOMPSON AND HOWLE TRIAL LAWYERS
294 N. Main Street
Cave Springs, AR 72718
Tel: (901) 461-2920
hhowle@ThompsonandHowle.com

Gary R. Buckles
109 Beard Avenue, Suite 101
Poteau, OK 74953
Tel: 918-647-3667  Fax: 918-647-0607
buckleslaw@windstream.net

***Attorneys for Plaintiffs, Roger and Suzanna Mattox***

                                                 */s/ Theresa N. Hill*
                                                 THERESA N. HILL