# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

FILED

OCT 2 2 2025

RONNIE HACKLEE
Clerk, U.S. District Court
By_____
DEPUTY

SUZANNA and ROGER MATTOX,    )
)
Plaintiffs,    )
)
v.    )
)    Case No. 6:24-cv-235-JAR
PRODUCT INNOVATIONS RESEARCH,    )
LLC d/b/a SUNEVOLUTIONS; COSWAY    )
COMPANY, INC.; and JOHN DOES 1-3,    )
)
Defendants.    )

## ORDER

*"Trust, but verify."*
— President Ronald Reagan, White House Press Conference (Dec. 16, 1987)

## I.    INTRODUCTION

This ruling is not about technology. It is about trust. Justice is built on language, and language draws its power from the hearts and minds that create it. Words alone are empty until filled with human conviction. The same is true of every pleading filed before this Court. Generative technology can produce words, but it cannot give them belief. It cannot attach courage, sincerity, truth, or responsibility to what it writes. That remains the sacred duty of the lawyer who signs the page.

Across eleven (11) pleadings, that duty was forgotten. As outlined below, Plaintiffs' counsel submitted pleadings containing fabricated case citations, erroneous citations, quotations of nonexistent law, and misstatements of law. The

filings ranged from summary-judgment briefing, to motions in limine, and even a sanctions motion. The pattern was not inadvertent, and it was not harmless. The Court values trust among advocates, but trust must be earned through verification. In this case, filings were trusted, but never verified, and the results speak for themselves.

After reviewing the record, conducting two show-cause hearings, and considering the affidavits, testimony, and argument of counsel, the Court finds that the use of generative artificial intelligence in the preparation of these pleadings violated both Rule 11(b) of the Federal Rules of Civil Procedure and this Court's *AI Guidelines on Generative AI Disclosure and Certification*[1].

The integrity of judicial proceedings depends on the authenticity of what is filed. This case demonstrates the cost of neglecting that obligation.

## II.  BACKGROUND

### A.  Procedural

This case was removed from state court on July 10, 2024. Over the following year, multiple attorneys entered appearances on behalf of the plaintiffs: Gary R. Buckles as local counsel on July 22, 2024 (Dkt. 12); T. Ryan Scott on July 29, 2024 (Dkt. 13); Sach D. Oliver, admitted *pro hac vice* on August 12, 2024 (Dkt. 17) and entering his appearance the next day (Dkt. 18); and Harrison A. Howle on September 16, 2024 (Dkt. 25). Robert Lambert, the state-court attorney who filed the original petition,

---

[1] https://www.oked.uscourts.gov/content/jason-robertson-magistrate-judge

never filed an entry of appearance in federal court and was permitted to withdraw on September 8, 2025 (Dkts. 137–138). On August 20, 2024, all parties consented to the jurisdiction of the United States Magistrate Judge assigned to this case. Fed. R. Civ. P. 73(b)(1). The United States Magistrate Judge exercises complete jurisdiction over this case through and including trial and the entry of a final judgment in accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (Dkt. 20).

**B.      Substantive**

On June 20, 2025, plaintiffs' counsel (Harrison A. Howle, T. Ryan Scott, Sach D. Oliver, and Robert Lambert) filed a Sealed Response to Defendants' Motion for Summary Judgment ("Sealed Response") containing six (6) fabricated case citations, three (3) erroneous citations, three (3) quotations of nonexistent law, and five (5) misstatements of law. [Dkt. 61]. On June 30, 2025, plaintiffs' counsel filed a Motion for Partial Summary Judgment containing one (1) fabricated case citation and two (2) misstatements of law. [Dkt. 72]. On July 2, 2025, plaintiffs' counsel filed a Motion to Strike and Motion for Sanctions containing two (2) fabricated case citations. [Dkt. 78]. Plaintiffs' counsel subsequently filed six (6) Motions in Limine containing a total of four (4) fabricated case citations, two (2) quotations of nonexistent law, and one (1) misstatement of law. [Dkts. 89, 91, 92, 93, 94, 95]. On July 25, 2025, plaintiffs' counsel filed a Response to Defendants' Motion in Limine containing one (1) quotation of nonexistent law. [Dkt. 101]. And on July 27, 2025, plaintiffs' counsel filed a Reply in Support of its Motion to Strike and Motion for Sanctions containing one (1) fabricated case citation. [Dkt. 102].

Counsel for defendants filed a reply in support of summary judgment on July 29, 2025, and noted they were unable to locate multiple cases cited in plaintiffs' Sealed Response. [Dkt. 104 at 8]. On August 4, 2025, plaintiffs' counsel filed a Motion to Amend the Sealed Response and six Motions in Limine for the sole purpose of correcting "clerical and formatting errors." [Dkt. 107]. The Court thereafter engaged in a *sua sponte* review of each pleading submitted on behalf of plaintiffs during the course of this litigation and identified, *inter alia*, the following issues:

- *Williams v. Borden, Inc.*, 637 P.2d 731 (Okla. 1981) does not exist. *See* [Dkt. 61 at 14]. The Court found no cases under that citation. There is a Tenth Circuit decision under that case name, *Williams v. Borden, Inc.*, 637 F.2d 731 (10th Cir. 1980), but it does not contain the law quoted by plaintiffs' counsel.

- *Case v. Fiberboard Corp.*, 1996 OK 86, 943 P.2d 955 does not exist. *See* [Dkt. 61 at 14]. The case found at the first half of that citation is *Brashier v. Farmers Ins. Co., Inc.* 1996 OK 86, 925 P.2d 20, an action involving bad faith refusal to pay uninsured motorist benefits. The case found at the latter half of that citation is *State v. Adams*, 284 Mont. 25, 943 P.2d 955 (1997), a Montana civil rights case. There is an Oklahoma Supreme Court decision with a similar case name, *Case v. Fibreboard Corp.*, 1987 OK 79, 743 P.2d 1062, but it does not "affirm[] negligence claims for failure to implement adequate product safety practices." [*Id.*].

- *St. Louis-San Francisco Ry. Co. v. Duke*, 1959 OK 250, 363 P.2d 764 does not exist. *See* [Dkt. 61 at 17]. The case found at the first half of that citation is *Mistletoe Exp. Serv., Inc. v. Culp*, 1959 OK 250, 353 P.2d 9, a personal injury case. The Court found no cases under the latter half of that citation.

- *Brown v. Crown Equip. Co.*, 181 F. App'x 760 (10th Cir. 2006) does not exist. *See* [Dkt. 61 at 17, 20]. The case found at that citation is *Burl v. Principi*, 181 F. App'x 760 (11th Cir. 2006), an out-of-circuit employment discrimination action.

- *Austin v. Ohio Cas. Ins. Co.*, 1984 OK 41, 678 P.2d 721 does not exist. *See* [Dkt. 61 at 20]. The case found at the first half of that citation is *Thomas v. Bank of Okla., N.A.*, 1984 OK 41, 684 P.2d 553, a dispute over title to property in a revocable inter vivos trust. The Court found no cases under the latter half of that citation.

4

- *Lash v. Hollis*, 1978 OK 117, 571 P.2d 917 does not exist. *See* [Dkt. 61 at 24]. The case found at the first half of that citation is *Concannon v. Hampton*, 1978 OK 117, 584 P.2d 218, an action brought to register in Oklahoma a Missouri judgment plaintiff obtained against defendant. The case found at the latter half to that citation is *Reynolds v. Port of Portland*, 31 Or. App. 817, 571 P.2d 917, an Oregon personal injury action.

- *Creech v. Melton*, 594 P.2d 408 (Okla. 1979) does not exist. *See* [Dkt. 72 at 2; Dkt. 92 at 2]. The Court found no cases under that citation.

- *Two Old Hippies LLC v. Catch the Bus LLC*, 784 F. App'x 618 (10th Cir. 2019) does not exist. *See* [Dkt. 78 at 5]. The Court found no cases under that citation. There is a District of New Mexico decision under that case name, *Two Old Hippies, LLC v. Catch the Bus, LLC*, 274 F.R.D. 685 (D.N.M.), but it does not affirm default judgment "where discovery abuse irreversibly prejudiced the opposing party." [*Id.*].

- *F.D.I.C. v. Daily*, 973 F.Supp.2d 1116 (D. Colo. 2013) does not exist. *See* [Dkt. 78 at 5; Dkt. 102 at 3]. The Court found no cases under that citation. There is a Tenth Circuit decision under that case name, *F.D.I.C. v. Daily*, 973 F.2d 1525 (10th Cir. 1992), upholding the lower court's entry of default judgment in favor of FDIC for failure to comply with discovery demands and court orders.

- *White v. Deer & Co.*, No. 13-CV-437-D, 2016 WL 11750888 (W.D. Okla. Apr. 13, 2016) does not exist. *See* [Dkt. 91 at 2]. The Westlaw citation is an Answer Brief filed in a Florida Appeals court.

- *Morris v. Travelers Indem. Co.*, 518 F.Supp.2d 1245 (W.D. Okla. 2021) does not exist. *See* [Dkt. 94 at 3]. The Court found no cases under that citation. There is a Tenth Circuit decision under that case name, *Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755 (10th Cir. 2008), but it does not contain the law quoted by plaintiffs' counsel.

- *Kieffer v. Weston Land, Inc.*, No. 18-CV-794-R, 2021 WL 1099618 (W.D. Okla. Mar. 22, 2021) does not exist. *See* [Dkt. 94 at 3]. The Court found no cases under that citation. There is a Tenth Circuit decision under that case name, *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496 (10th Cir. 1996), but it does not "exclud[e] lay opinion testimony about the cause of health problems." [*Id.*].

- *Tansey v. Dacomed Corp.*, 1994 OK 70, 890 P.2d 881 is an erroneous citation. *See* [Dkt. 61 at 24]. The correct citation is *Tansey v. Dacomed Corp.*, 1994 OK 146, 890 P.2d 881.

- *Wagoner v. Bennett*, 1993 OK 100, 814 P.2d 476 is an erroneous citation. *See* [Dkt. 61 at 24-25]. The correct citation is *Wagoner v. Bennett*, 1991 OK 70, 814 P.2d 476.

- *Thompson v. Presbyterian Hosp. Inc.*, 1982 OK 87, 652 P.2d 260 does not contain the law quoted by plaintiffs' counsel. *See* [Dkt. 61 at 22].

- *Howard v. Zimmer, Inc.*, 299 P.3d 463 (Okla. 2013) does not contain the law quoted by plaintiffs' counsel. *See* [Dkt. 61 at 24].

- *Wyeth v. Levine*, 555 U.S. 555 (2009) does not contain the law quoted by plaintiffs' counsel. *See* [Dkt. 89 at 2].

- *Dodson v. Bd. of Cty. Comm'rs*, 878 F.Supp.2d 1227 (D. Kan. 2012) does not hold what plaintiffs' attorneys purport. *See* [Dkt. 93 at 2].

After the Court's independent review revealed the scope of the inaccuracies, on August 28, 2025, the Court entered the following minute order:

> "Upon further review of the documents filed by Plaintiff in this case, the hearing to receive argument on the various pending motions in this case set for September 3, 2025 at 3:00 p.m. is hereby STRICKEN. In lieu of that hearing, Plaintiff's counsel will be required to appear before this Court on SEPTEMBER 11, 2025 AT 1:30 P.M. in Courtroom 3, Room 432, U.S. Courthouse, 5th & Okmulgee, Muskogee, OK, before Magistrate Judge Jason A. Robertson, and show cause as to why sanctions should not be assessed for the filing of multiple documents with this Court which contain false or misleading information and citations. ALL COUNSEL OF RECORD REPRESENTING PLAINTIFF WILL BE REQUIRED TO APPEAR AT THIS HEARING." (Dkt. 136).

The show-cause hearing was held on September 11, 2025, at which the Court received testimony and argument from counsel. At that hearing, Messrs. Howle and Scott appeared; Messrs. Buckles and Oliver did not. Following their nonappearance, the Court issued a Minute Order on September 11, 2025 (Dkt. 142) directing Buckles and Oliver to appear and show cause why further sanctions should not issue for failing to attend the prior hearing. That second hearing was held on October 14, 2025, at which counsel appeared and were afforded a full opportunity to be heard.

6

The matter was then taken under advisement and is now resolved by this written order.

## III. ANALYSIS

For the reasons set forth below, the Court finds that plaintiffs' counsel violated their obligation under Rule 11(b), and sanctions are warranted.

### A.  Violations of Rule 11(b)

Rule 11(b) is the federal lawyer's first oath in action. A standing promise that every pleading, motion, and argument submitted to a court of the United States rests on truth, law, and reason. It demands that an attorney's signature certify not creativity, but credibility: that the filing was formed after reasonable inquiry, grounded in fact, and supported by existing law or a non-frivolous argument for its extension. The rule is not aspirational; it is the minimal standard of honesty that keeps the adversarial process tethered to reality.

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support

7

       after a reasonable opportunity for further investigation or discovery; and

         (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

This obligation is absolute. It cannot be outsourced to technology or delegated to co-counsel. The attorney's signature is the personal warranty of truth that anchors the judicial process. Every one of the eleven (11) pleadings at issue was signed by Harrison A. Howle. By doing so, he certified that each filing had been reviewed and verified by human judgment. The record proves otherwise. The Court's independent review revealed twenty-eight (28) false or misleading citations: fourteen (14) fabricated cases that do not exist and fourteen (14) erroneous or misquoted authorities.

At the September 11 show-cause hearing, Mr. Howle admitted that he had used ChatGPT "to make his writing more persuasive," that the program "changed his citations," and that he did not verify them before filing. None of the eleven (11) pleadings contained the disclosure or certification required by this Court's AI Guidelines on Generative AI Disclosure and Certification.

When defense counsel notified plaintiffs' attorneys on July 29, 2025 (Dkt. 104 at 8) that several cited cases could not be located, Mr. Howle did not withdraw or correct his filings. Instead, he filed a Motion to Amend on August 4 (Dkt. 107) that described the false authorities as "clerical and formatting errors." That explanation was inaccurate. The problem was not form, it was falsity.

The Court therefore finds that Mr. Howle violated Rule 11(b)(2) and (b)(3) by presenting legal contentions not warranted by existing law and factual representations lacking evidentiary support. His conduct also contravened the duty of candor owed to the Court under Model Rule 3.3.

Responsibility under Rule 11 extends to all attorneys of record. T. Ryan Scott, who remained active in hearings and discovery; Sach D. Oliver, the supervising partner admitted pro hac vice; and Gary R. Buckles, local counsel of record, all shared an obligation to ensure that filings presented in their names were accurate. None exercised that oversight. Each failed in their role of verification, and the cumulative neglect frustrated the administration of justice.

### B.    Analytical Framework for AI-Generated Filings

Federal courts increasingly confront filings prepared with the assistance of generative artificial intelligence. While such tools can enhance efficiency, they also create a new professional hazard, synthetic authority presented as precedent. No uniform standard yet governs this issue. This Court therefore articulates the following framework, grounded in Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, to guide this Court in future cases in which AI-generated hallucinations appear in filings.

When a pleading containing fabricated citations or nonexistent law has been identified and a hearing held, this Court shall evaluate three core factors:

1. Verification and Inquiry — Whether counsel conducted a reasonable, human-based verification of every cited authority before filing. A reasonable inquiry

requires more than reliance on an automated tool; it demands independent confirmation through recognized primary legal sources. The signature of an attorney certifies human diligence, not mechanical output.

2. Candor and Correction — Whether counsel promptly disclosed the use of AI and corrected the record once inaccuracies were discovered. Candor after filing weighs heavily in mitigation; concealment or minimization aggravates the violation. The duty of candor extends beyond the moment of signature, it continues for as long as the filing remains before the Court.

3. Accountability and Supervision — Whether supervising or associated attorneys exercised oversight consistent with Model Rules 5.1 and 5.3 and whether firm-level safeguards existed to prevent recurrence. The inquiry extends beyond the drafter to the institutional culture that permitted unverified authority to reach the docket. A firm's silence or absence of policy does not immunize it; it implicates it.

These factors balance culpability against mitigation and aim to deter repetition rather than destroy reputation. They also provide a path for future litigants in this Court when confronting AI-related misconduct, recognizing that the issue implicates the ethical foundations of advocacy itself.

### C.    Application of the Framework

#### 1.    Verification and Inquiry

Mr. Howle's admission that he relied on ChatGPT without verifying its citations demonstrates the total absence of human inquiry. Fourteen (14) fabricated

cases and fourteen (14) misquoted authorities appeared across eleven (11) pleadings: All signed by him and filed without certification. The volume and repetition of these errors show not inadvertence but systemic neglect. By contrast, Mr. Scott and Mr. Oliver did not draft the pleadings but remained counsel of record and continued to rely on them in hearings, depositions, and conferences. Their failure to examine or question the filings before advocacy reflects a secondary lapse of verification.

Mr. Buckles, as local counsel, admitted he never reviewed the pleadings and entered his appearance merely "as a favor." His abdication eliminated the local check Rule 11 is designed to provide.

Collectively, the absence of verification at every level satisfies the first factor and represents the core breach.

### 2.    Candor and Correction

When defense counsel raised the issue on July 29, 2025, plaintiffs' attorneys did not investigate or correct the record. Their Motion to Amend of August 4 (Dkt. 107) characterized the false citations as "clerical." That assertion misled the Court and opposing counsel. At the show-cause hearing, Mr. Howle admitted the use of ChatGPT only after direct questioning. No earlier disclosure was made. Mr. Scott and Mr. Oliver likewise made no corrective filing despite knowing the Court was investigating. The duty of candor was breached both before and after the Court's intervention.

11

### 3.    Accountability and Supervision

The Oliver Law Firm, which referred the case to Mr. Howle, maintained active involvement in discovery and strategy but had no policy governing AI use for cases referred to outside counsel and apparently conducted no review of pleadings. Its inattention enabled the misconduct.

Local counsel Gary R. Buckles provided no supervision and failed even to attend the first show-cause hearing, requiring a second order compelling his appearance. Such passivity reflects a misunderstanding of the role of local counsel, which is fiduciary, not ceremonial.

The third factor therefore weighs heavily in favor of sanctions.

### D.    Findings under the Framework

All three factors (verification, candor, and accountability) are met. Each demonstrates a breach of the attorney's fundamental duty of reasonable inquiry and honesty to the tribunal.

The Court does not find that Mr. Howle acted with intent to deceive. Rule 11 does not require intent; it requires responsibility. An attorney who signs eleven (11) pleadings containing fabricated authority, after using an undisclosed AI program and making no effort to verify a single citation, acts with reckless disregard for the truth. Recklessness in this context is not a lapse of diligence; it is the conscious decision to proceed in the absence of knowledge. Repetition across eleven (11) pleadings magnifies that recklessness and transforms neglect into misconduct.

The same reasoning applies, though to a lesser extent, to the supervisory and associated counsel. Their continued participation without inquiry or correction reflected indifference to accuracy once the falsity was known. Each owed the Court, and the profession, more than silence.

Accordingly, the Court concludes that plaintiffs' counsel collectively violated Rule 11(b). Their conduct, though not born of deceit, displayed a reckless disregard for the obligation to ensure that what is filed in federal court is true, verified, and worthy of the public trust. Sanctions are therefore warranted both to redress the specific harm and to deter recurrence.

## IV.    SANCTIONS

For guidance, the Court looks to other cases that have sanctioned attorneys for similar conduct. In nearly all cases, courts have imposed monetary sanctions ranging from $1,500 to $15,000. *See e.g.*, <u>Wadsworth v. Walmart Inc.</u>, 348 F.R.D. 489, 499 (D. Wyo. 2025) ($3,000 fine for the drafter of the brief with fake cases and $1,000 for other attorneys who signed, but did not draft, the brief); <u>United States v. Hayes</u>, No. 24-CR-280, 763 F.Supp.3d 1054, 1072-73 (E.D. Cal. Jan. 17, 2025) ($1,500 fine); <u>Gauthier v. Goodyear Tire & Rubber Co.</u>, No. 23-CV-281, 2024 WL 4882651 at *3 (E.D. Tex. Nov. 25, 2024) ($2,000 fine); <u>Mid Cent. Operating Eng'rs Health & Welfare Fund v. Hoosiervac LLC</u>, No. 24-CV-326, 2025 WL 574234 at *2-3 (S.D. Ind. Feb. 21, 2025 (recommending $15,000 fine); <u>Mata v. Avianca, Inc.</u>, 678 F.Supp.3d 443, 459 (S.D.N.Y. 2023) ($5,000 fine for citing fake cases and then submitting AI-generated fake excerpts from the fake cases).

In some cases, courts have referred attorneys to the appropriate disciplinary body for disciplinary proceedings. *See e.g.*, <u>Park v. Kim</u>, 117 F.4th 610, 614 (2d Cir. 2024) (referring attorney to Second Circuit's Grievance Panel); <u>Hayes</u>, 763 F.Supp.3d at 1072-73 (directing Clerk of Court to serve copy of sanctions order on bar); <u>Bevins</u>, 2025 WL 1085695 at *7 (directing Clerk of Court to serve copy of sanctions order on two bars); <u>Dehghani</u>, 2025 WL 988009 at *6 (ordering attorney to self-report sanctions order to two bars); <u>Hoosiervac LLC</u>, 2025 WL 574234 at *2-3 (referring attorney to the Southern District of Indiana's Grievance Panel).

In addition to monetary sanctions, courts have imposed more targeted sanctions given the circumstances by revoking the *pro hac vice* admission of attorneys, <u>Wadsworth</u>, 348 F.R.D. at 497-98, directing the Clerk of Court to serve a copy of the sanctions order on all district and magistrate judges in the district, <u>Hayes</u>, 763 F.Supp.3d at 1072-73, ordering attorney's fees be paid to opposing counsel for having to respond to pleadings containing fake cases, <u>Garner v. Kadince, Inc.</u>, 2025 UT App 80, ¶ 16, 571 P.3d 812, 816, requiring the attorney to mail letters to each judge falsely identified as the author of nonexistent opinions, <u>Gauthier</u>, 2024 WL 4882651 at *3, or ordering the attorney to attend CLE trainings regarding the use of AI, <u>Dehghani</u>, 2025 WL 988009 at *6; <u>Gauthier</u>, 2024 WL 4882651 at *3; <u>Bunce v. Visual Tech. Innovations, Inc.</u>, No. 23-CV-1740, 2025 WL 662398 (E.D. Pa. Feb. 27, 2025).

The message from these cases is unmistakable: when attorneys abandon verification, they abandon their oath. Artificial intelligence may explain an error, but

it can never excuse one. The sanction must therefore speak not only to the lawyers before this Court, but to every lawyer tempted to trade diligence for speed. The rule is simple and enduring: truth is not negotiable, and the signature on a pleading still means something.

## A.    Application of Sanctions to Individual Counsel

When this Court first considered appropriate monetary sanctions, it looked to recent cases addressing the submission of AI-generated or fabricated authorities. In *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489 (D. Wyo. 2025), fines reached $3,000 per drafter and $1,000 per signer. In *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), the sanction was $5,000 for counsel who submitted six (6) fictitious citations. Those cases involved one or two pleadings. Here, the misconduct spanned eleven (11) pleadings and twenty-eight (28) false or misleading citations:    fourteen (14) fabricated, and fourteen (14) erroneous or misquoted.

Based on that scope, the Court initially contemplated fines in the range between $10,000 and $15,000 for the drafter and proportionate amounts for the others. However, the Court also heard testimony and observed demeanor at two hearings. Every attorney appeared (eventually), admitted the wrongdoing, accepted responsibility, and fell upon the mercy of the Court. None denied, deflected, or excused. Their contrition was genuine and complete.

Rule 11's purpose is deterrence, not destruction. The public reprimands issued in this Order, together with joint restitution of attorney's fees and the permanent

record of these findings, will deter far more effectively than excessive fines. The Court therefore exercises restraint and imposes reduced but meaningful sanctions calibrated to each attorney's degree of responsibility. These amounts ($3,000, $2,000, and $1,000) stand as tangible reminders that candor is the currency of credibility before this Court.

### Harrison A. Howle — Signing and Drafting Attorney

Mr. Howle drafted and signed every pleading at issue. By his own admission, he used ChatGPT to "make his writing more persuasive," allowed it to alter citations, and filed the resulting briefs without verification. His actions were reckless but not deceitful.

At the September 11 hearing, he accepted full responsibility and fell upon the mercy of the Court. He has demonstrated sincere remorse. The Court credits his candor. While his conduct represented a profound failure of professional duty, it also presents a rare opportunity for public correction rather than professional ruin.

**Monetary Sanction:** $3,000
**Public Reprimand:** Issued by this Order
**Bar Referral:** None. The Court finds no intentional deception warranting referral.
**Continued Representation:** Mr. Howle may remain as counsel of record, subject to the continuing duty to verify all future filings personally and to certify compliance with this Order.

### T. Ryan Scott — Referring Counsel and Active Participant

Mr. Scott did not draft or sign the defective pleadings but remained counsel of record and relied upon them throughout the case. His failure to question their accuracy reflected neglect of oversight, not malice. At the hearing he admitted that

16

omission, accepted fault, and has since instituted firm policies requiring verification of all AI-assisted filings.

The Court initially considered a sanction of $4,000 to $5,000 based on his supervisory role, but his candid acknowledgment of responsibility and corrective action warrant mitigation.

**Monetary Sanction:** $2,000
**Public Reprimand:** Issued by this Order
**Bar Referral:** None. This sanction reflects his secondary role while reaffirming that supervision is a duty, not a courtesy.

### Sach D. Oliver — Managing Partner (pro hac vice)

As managing partner, Mr. Oliver authorized the referral to Mr. Howle and remained counsel of record. He had no policy governing AI use by associated counsel and conducted no independent review of filings submitted in his firm's name. That absence of supervision allowed unverified authorities to reach the docket.

At the October 14 hearing, Mr. Oliver accepted full accountability and pledged immediate reforms within his firm. The Court originally considered a sanction of $2,500 to $3,000 but, in light of his honest testimony and remedial steps, concludes that a reduced penalty will adequately deter recurrence.

**Monetary Sanction:** $1,000
**Public Reprimand:** Issued by this Order
**Bar Referral:** None. The sanction recognizes limited direct involvement yet underscores that firm leaders remain guardians of their name and their firm's reputation on every pleading.

### Gary R. Buckles — Local Counsel of Record

Mr. Buckles entered his appearance as local counsel on July 22, 2024 (Dkt. 12). He never met the client, never reviewed the pleadings, and did not participate in supervising out-of-district counsel. He failed to appear at the September 11 hearing, requiring a second show-cause order compelling his attendance on October 14. By his own admission, his role was purely "as a favor" to the original state-court attorney. That description underscores the systemic risk of honorary sponsorships.

Mr. Buckles' neglect as local counsel did not create the hallucinated authorities, but it enabled them. His name on the docket gave those pleadings a presumption of legitimacy that they did not deserve. When a lawyer lends his signature, or his silence, to filings without inquiry, he converts inattention into representation and transforms friendship into liability. His conduct eroded the safeguard that local representation is meant to provide.

**Public Reprimand:** Mr. Buckles shall receive a formal public reprimand through this Order. The reprimand serves to clarify that an attorney of record, regardless of degree of involvement, is accountable for the accuracy of filings submitted under his or her name.

**Restriction on Sponsorship**: For a period of twelve (12) months, Mr. Buckles may not serve as sponsoring or local counsel for any pro hac vice attorney in the Eastern District of Oklahoma. After that period, reinstatement of sponsorship privileges will be automatic.

These sanctions, though measured, are neither symbolic nor lenient. They reflect the Court's confidence that deterrence arises from conscience as much as from cost. The combination of public reprimands, individual fines, and full restitution of

attorney's fees restores the balance Rule 11 demands: truth verified, accountability imposed, and integrity reaffirmed.

All counsel are admonished that the trust restored today must be maintained tomorrow. The record of this Order will stand as both warning and witness that verification is not optional, and that mercy in this Court is always tethered to responsibility.

### B. Remedial Correction of the Record

The purpose of sanctions under Rule 11 is not only to deter future misconduct but also to restore the integrity of the record already before the Court. Pleadings that rely upon fabricated or erroneous authorities cannot remain on the docket. They misstate the law, distort the issues, and leave the Court to build upon a foundation that no longer exists.

Accordingly, all filings identified in this Order as containing fabricated or inaccurate citations are hereby STRICKEN from the record. This includes the following docket entries: 61, 72, 78, 89, 91, 92, 93, 94, 95, 101 and 102.

Within sixty (60) days of the date of this Order, Plaintiffs shall file verified amended pleadings that show as follows:

1. drafted and reviewed by human counsel without the use of generative artificial intelligence tools to produce or alter text or citations, except as expressly permitted by this Court's AI Guidelines on Artificial Intelligence Disclosure and Certification;

2. contain only accurate and verifiable authorities; and,

3. are accompanied by a signed Certification of Verification confirming that counsel personally reviewed each cited case, statute, or exhibit for accuracy.

The Certification shall state:

> "I certify that I personally reviewed each citation and authority referenced in this pleading and that, to the best of my knowledge and belief, all citations are genuine and accurately reflect the law as of the date of filing. This filing complies with the requirements of the Court's AI Guidelines on Artificial Intelligence Disclosure and Certification."

Failure to file verified pleadings within the sixty-day period will result in dismissal of those claims without further notice.

This directive is restorative. The record must reflect truth before the Court may apply law. The Federal Rules presuppose a foundation of accuracy, and where that foundation has been compromised, the only remedy is reconstruction. The Court therefore wipes the slate clean, in the service of veracity. Having restored the integrity of the record, the Court now turns to the question of cost, specifically, the burden unjustly borne by opposing counsel in responding to pleadings that no longer exist.

## C. Award of Attorney's Fees and Costs

Under Rule 11(c)(4), a sanction "may include … an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." The Court finds that the defendants' counsel incurred

substantial expense responding to the fabricated filings and addressing the procedural disruption that followed.

The Affidavit of Theresa N. Hill, lead counsel for defendants Cosway Company, Inc. and Product Innovations Research, LLC, establishes that her firm, Rhodes, Hieronymus, Jones, Tucker & Gable, PLLC, expended $23,423.50 in attorney fees and $72.40 in costs, for a total of $23,495.90, in connection with these pleadings and the resulting hearings. The Court finds these fees and expenses reasonable and directly caused by the violations identified in this Order.

Accordingly, pursuant to Rule 11(c)(4), the Court orders joint and several reimbursement of these amounts by the Howle Law Firm and the Oliver Law Firm, in equal shares. Each firm shall remit $11,747.95 to defense counsel within thirty (30) days of this Order. This obligation is separate from the individual monetary sanctions imposed above and shall not be borne by local counsel Gary R. Buckles.

The Court directs defense counsel to file a short notice of compliance once payment is received.

The purpose of these sanctions is not punitive but restorative:  to restore the meaning of local appearance and to reinforce the Court's expectation that every lawyer of record, regardless of title, stands as both advocate and guarantor of integrity. The Court expects compliance not because it demands perfection, but because the justice system cannot function without verification.

## V.    CONCLUSION

The Court has imposed sanctions to restore, not to ruin. The aim of this ruling is not punishment for its own sake, but the reaffirmation of professional honor.

All counsel have appeared, accepted responsibility, and sought mercy. The Court has answered with proportion, acknowledging their contrition while ensuring accountability endures. The combination of public reprimand, restitution, and monetary penalty satisfies the Rule 11 standard of deterrence and reaffirms that the practice of law is an act of trust.

The lesson is neither new nor novel. The practice of law has never been about convenience; it has always demanded courage. The quiet, disciplined courage to stand for what is right when compromise would be easier. Marcus Aurelius wrote, "If it is not right, do not do it; if it is not true, do not say it." *Meditations* bk. 12, § 17 (Gregory Hays trans., Modern Library ed. 2002). That simple maxim captures the heart of advocacy: the moral courage to write, to argue, and to sign only what truth can defend.

It takes courage to put a word, a sentence, a phrase to paper in defense of another. It takes courage to sign one's name beneath arguments that carry the weight of justice. Machines can assemble words, but they cannot believe in them. They can process information, but they cannot possess conviction.

The Court does not fear progress. It fears abdication. When lawyers trade reflection for automation, they surrender the very quality that makes their words

worthy of belief. The oath of candor is not a relic; it is the living covenant between the advocate and the tribunal. It binds judgment to integrity and intellect to honor.

Generative tools may assist, but they can never replace the moral nerve that transforms thought into advocacy. Before this Court, artificial intelligence is optional. Actual intelligence is mandatory.

IT IS SO ORDERED this 22nd day of October 2025.

Jason A. Robertson
United States Magistrate Judge